IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| VIVIAN HOPKINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-1361 |
| | ) | |
| LOUDOUN COUNTY SCHOOL BOARD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's motion for summary judgment.

During the 2010-2011 school year, Vivian Hopkins ("Plaintiff") was employed by Loudoun County Public Schools ("L.C.P.S."). Citing her failure to meet L.C.P.S.'s interpersonal skills standard, the Loudoun County School Board ("Defendant") chose not to renew Plaintiff's employment contract following the 2010-2011 school year, ending her tenure with L.C.P.S. Plaintiff alleges the her contract was in fact not renewed due to race discrimination and retaliation for protected activity. She also alleges she was subjected to a hostile work environment during the course of her employment by Defendant. Because Plaintiff has failed to establish a prima facie case of unlawful activity by Defendant, and because no genuine issue of

material fact remains to be decided, summary judgment in favor of Defendant is appropriate.

Plaintiff began her employment with L.C.P.S. in 2006. At all times relevant to this case, she worked as an Instructional Materials Technician ("I.M.T.") within the Office of Instruction. As an I.M.T., she was a "classified employee" assigned to a specific supervisor, with no more than one I.M.T. assigned to any one supervisor. Classified employees are not employed under a standard employment contract. Instead, they work on a school year-to-school year basis, with renewal at the end of each school year at Defendant's discretion.

Early in the 2009-2010 school year, tension developed between Plaintiff and Denise Friedman, another I.M.T. whose workspace was in close proximity to Plaintiff's. Although the two had previously been friendly, their relationship soured to the point that Peter Hughes, L.C.P.S. Director of Curriculum and Instruction, called a meeting August 24, 2009, to discuss the conflict. Plaintiff, Plaintiff's supervisor, Friedman, and Jim Harmon (Friedman's supervisor) attended this meeting. Prior to the meeting, Plaintiff requested the presence of Wendall Fisher, the L.C.P.S. Supervisor of Outreach Programs. However, Hughes instead decided to include the L.C.P.S Director of Employee Relations due to his experience with handling personnel matters.

The meeting was unsuccessful. After arriving late and insisting on Fisher's presence, Plaintiff asserted the existence of "racial issues" within the office that had not been addressed. Plaintiff refused to be seated and discuss her conflict with Friedman. Ultimately, she walked out on the meeting. As a result of the meeting, Hughes issued a letter of reprimand to Plaintiff two days after the meeting on August 26, 2009.

Without identifying specific dates, Plaintiff alleges she was harassed and intimidated by Harmon and Friedman. Specifically, she claims Friedman would play music so loud that it was impossible to carry on a phone conversation.[1] She also claims Harmon and Friedman made the following "racially derogatory" remarks in her vicinity: a) referring to African Americans as "monkeys"; b) expressing their need to retire because the United States has an African American president; and c) claiming the White House must be called the "Black House" following the election of an African American president.

Plaintiff's evaluation for the 2009-2010 school year was prepared on March 26, 2010. She received a rating of "needs improvement" in three areas: attitudes and work habits, interpersonal relationships, and judgment. When Plaintiff's

---

[1] Plaintiff does not state whether the loud music was played by Harmon or Friedman. The Court assumes the music was played by Friedman, as it was Friedman's desk that was in close proximity to Plaintiff's.

supervisor refused to change her ratings, Plaintiff filed a grievance asserting she had not been advised of the problem areas identified in her evaluation (prior to the evaluation itself) as required by L.C.P.S. policy. Her grievance was sustained and on April 19, 2010, Plaintiff's evaluation was changed to show that she satisfactorily met job requirements in each of the three areas originally designated as "needs improvement."

On June 10, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.") alleging race and sex discrimination along with retaliation for protected activity. In her complaint, she referenced the meeting held by Hughes as well as her pre-grievance "needs improvement" ratings. Plaintiff stated it was her belief that "[her] situation would have been handled differently" if she was white.

Later, on September 16, 2010, Plaintiff was working after her scheduled hours. Hughes saw her and confronted her, referencing the L.C.P.S. overtime policy. Hughes instructed Plaintiff to finish what she was working on and depart based on his assumption that she was continuing to perform work duties. Plaintiff asserts she was not working, but instead addressing personal matters and waiting to use the gym. This incident, which Plaintiff views as part of an ongoing pattern of

discrimination and retaliation, led to further inquiries by Hughes into Plaintiff's work hours and, ultimately, another meeting.[2]

On October 20, 2010, Hughes scheduled a meeting with Plaintiff and her supervisor to discuss both their encounter on September 16 and Plaintiff's work hours generally. At Plaintiff's request, a representative of the Loudoun Education Association also attended. This meeting, like the August 2009 meeting, resulted in further allegations of discrimination and retaliation. Hughes found Plaintiff to be argumentative, while Plaintiff felt Hughes "had decided that [Plaintiff] could not be asking questions unless she was arguing." During the meeting, Hughes recommended that Plaintiff utilize the L.C.P.S. Employee Assistance Program, a free and confidential source of help for employees with problems that may impact their personal well-being.

On March 2, 2011,[3] Plaintiff alleges Friedman told her she was going to "take something and hit [Plaintiff] over the head" with Harmon stating he would assist. Plaintiff alleges she

---

2 Plaintiff's amended complaint does not mention this meeting, only that a memorandum by Hughes stating she "needed assistance and counseling" was placed in her personnel file. However, in her opposition to Defendant's motion for summary judgment, Plaintiff acknowledges the meeting and alleges the meeting was discriminatory in nature.
3 Plaintiff's amended complaint states this incident took place on March 2, 2010, but the rest of the record indicates it was actually on March 2, 2011. Even if the disparity was not a simple drafting error in Plaintiff's amended complaint and similar incidents did in fact take place on March 2, 2010, and March 2, 2011, the Court's analysis of Plaintiff's claims would not change.

"fear[ed] for her life" upon hearing this and that she subsequently filed a complaint with the Loudoun County Sheriff's Office. Plaintiff alleges she felt further intimidation when Harmon physically blocked her path to a meeting concerning this allegation.[4]

Plaintiff's employment with L.C.P.S. ended when her contract was not renewed after the 2010-2011 school year. The sequence of events that culminated in Plaintiff's contract not being renewed began at a meeting on March 24, 2011, that included Sharon Ackerman, L.C.P.S. Assistant Superintendent for Instruction, in attendance. Prior to the start of this meeting, Plaintiff alleges she felt further intimidation when Harmon physically blocked her path to the office in which it was held. The meeting's purpose was to again attempt resolution of Plaintiff's conflict with Friedman and Harmon, which had further soured after Plaintiff complained to Eric Stewart[5] about the incident on March 2, 2011. Plaintiff alleges Stewart failed to properly investigate her complaint because of her race; she also takes exception to Stewart's inquiries as to whether the comment may have merely been Friedman and Harmon "joking around."

At the March 24 meeting, Plaintiff's behavior was described by Ackerman as "combative, defensive, insubordinate, and rude."

---

[4] Plaintiff's amended complaint is unclear about whether this meeting is the one discussed immediately infra.
[5] After Peter Hughes retired in December 2010, he was replaced by Stewart.

As a result, she prepared a written reprimand for Plaintiff on March 28, 2011, and issued the letter at a meeting on April 4, 2011. In Ackerman's eyes, Plaintiff's behavior did not improve in the April 4 meeting. Thus, Ackerman recommended to Dr. Edgar Hatrick, L.C.P.S. Superintendent, that Plaintiff be suspended with pay through the end of the 2010-2011 school year and that her employment not be extended into the 2011-2012 school year.

During the same March/April 2011 timeframe, Plaintiff reviewed her personnel folder and discovered an August 2009 memo that had been placed in her file without her knowledge. Under L.C.P.S. policy, Plaintiff was entitled to be informed of any document placed in her personnel file that could lead to a negative evaluation. Thus, Plaintiff filed a grievance on April 25, 2011, which was granted by Dr. Hatrick's designee on May 10, 2011. The August 2009 memo was subsequently removed from Plaintiff's personnel file.

Plaintiff was placed on administrative leave on April 27, 2011, where she remained until her employment ended on June 30, 2011. She believes the decision not to renew her contract resulted from race discrimination and retaliation due to her June 2010 E.E.O.C. complaint, the grievances she filed with L.C.P.S., and the complaint she filed with the Loudoun County Sheriff's Office. Thus, she filed her initial complaint with this Court on October 16, 2014, alleging Defendant had violated

Title VII and 42 U.S.C. § 1981. When this Court dismissed her initial complaint it provided her an opportunity to file an amended complaint, which she did on January 5, 2015. Following discovery, Defendant now moves for summary judgment.[6]

"As amended, Title VII of the Civil Rights Act of 1964 creates a right of action for…federal employees alleging employment discrimination on the basis of race, color, religion, sex, or national origin." Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006). See 42 U.S.C. § 2000e-16(c). Under Title VII, "[i]t shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's…sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, it is unlawful for an agency to discriminate against an employee in retaliation for an employee's exercise of his or her rights under Title VII. Id. at § 2000e-3(a), see also Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008). The Civil Rights Act of 1866, 42 U.S.C. § 1981, applies to local governments in addition to private employers. It prohibits racial discrimination in the making and enforcement of contracts, including employment contracts, and encompasses

---

6 Discovery did not bolster Plaintiff's case. The only pieces of support to come out during discovery were her own affidavit and the affidavit of her sister, who did not witness any of the events identified in Plaintiff's amended complaint.

retaliation claims. <u>CBOCS West, Inc. v. Humphries</u>, 553 U.S. 442, 457 (2008).

Plaintiff's Title VII claims (discrimination and retaliation) and her § 1981 claim are both subject to the burden-shifting analysis first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as she has presented no direct evidence of discrimination. <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002) ("The <u>McDonnell Douglas</u> test is inapplicable where the plaintiff presents direct evidence of discrimination." (quoting <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121 (1985))); <u>see also</u> <u>Lewis v. Cent. Piedmont Cmty. Coll.</u>, 689 F.2d 1207, 1209 n.3 (4th Cir. 1982) ("it has been held, and we think correctly, that the <u>McDonnell Douglas</u> criteria apply equally to cases arising under Title VII or § 1981"). The initial burden is on the plaintiff to raise an inference of discrimination by establishing a prima facie case of discrimination by a preponderance of the evidence. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for its actions. <u>Id.</u> at 253. Then, if the defendant successfully carries its burden, "the plaintiff [has] an opportunity to prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

Additionally,

> [b]efore a federal court may assume jurisdiction over a claim under Title VII,…a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether 'reasonable cause' exists to believe that the charge of discrimination is true.

Davis v. North Carolina Dept. of Correction, 48 F.3d 134, 137 (4th Cir. 1995). Thus, this Court cannot grant relief to Plaintiff on any claim for which she failed to exhaust her administrative remedies.

Turning first to Plaintiff's claims under Title VII, her race discrimination and hostile work environment claims must be dismissed because she failed to exhaust her administrative remedies regarding them. She elected not to file a lawsuit following her June 2010 E.E.O.C. complaint and her 2011 complaint was based only on retaliation. Therefore, the allegations stated in her June 2010 E.E.O.C. complaint are time-barred and the allegations since that complaint have never been presented to the E.E.O.C. for an administrative remedy. However, even if Plaintiff had exhausted her administrative remedies, she has still not established a prima facie case of race discrimination or hostile work environment.

To establish a prima facie case of race discrimination, Plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment." Gerner v. Cnty. of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012). On a motion for summary judgment, the Court "view[s] the facts in the light most favorable to, and draw[s] all reasonable inferences in favor of, the nonmoving party." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009).

As an African American, Plaintiff is clearly a member of a protected class. Although the record indicates Plaintiff's job performance was far from satisfactory,[7] the Court will assume satisfactory job performance on a motion for summary judgment based on her performance evaluations. However, Plaintiff has not identified similarly-situated employees outside her protected class that received more favorable treatment, and therefore she has not established a prima facie case of race discrimination. Because Plaintiff clearly fails to satisfy the similarly-situated employee requirement for a prima facie case, it is unnecessary for this Court to address whether Defendant's

---

7 At least in part, Plaintiff's contract was not renewed because of her inability to engage in respectful discourse at meetings with her coworkers and members of the L.C.P.S. administration.

decision not to renew her contract was an adverse employment action.

Plaintiff's race discrimination claim relies heavily on her subjective beliefs along with her frustrations over comments she *overheard*, but which were not spoken to her. Her subjective belief that L.C.P.S. treated her poorly due to her race does not fully satisfy the requirements of Title VII, which proscribes conduct that is both subjectively and objectively offensive. See Jordan v. Alt. Res. Corp., 467 F.3d 378, 380 (4th Cir. 2006) (Title VII protection extended to employees "once they have an *objectively reasonable belief* that a Title VII violation has occurred." (emphasis in original)). Comments overheard but not directed toward her may comprise part of her hostile work environment claim, but she lacks standing to bring them as a race discrimination claim. More directly damaging to her claim, however, is that Plaintiff has not even attempted to identify similarly-situated employees outside her race that were treated differently from her. For all these reasons, her race discrimination claim fails.

As with her race discrimination claim, Plaintiff's hostile work environment claim would also fail even if she had exhausted her administrative remedies. To demonstrate a hostile work environment, she must prove that any harassment "was (1) unwelcome, (2) based on [her] race, (3) sufficiently severe or

pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [Defendant]." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). Defendant's conduct must be "severe or pervasive" because "Title VII does not create a general civility code in the workplace; it only proscribes behavior that is so objectively offensive as to alter the conditions of the victim's employment." Mosby-Grant v. City of Hagerstown, 630 F.3d 326 (4th Cir. 2010).

When considering Plaintiff's hostile work environment claim, this Court must look at all the alleged misconduct—including events that would be untimely if brought as discrete acts—to determine whether "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Here, Plaintiff has not shown working conditions that rise to the level of a Title VII violation.

Plaintiff's complaints about loud music being played in her presence coupled with race-related comments she overheard and a threat to "hit her over the head next time" fall short of the severity and pervasiveness required to establish a hostile work

environment.[8] The conduct she complains of is surely not "so objectively offensive as to alter the conditions of her employment," and therefore her hostile work environment claim also fails.

It is unlawful for L.C.P.S. to retaliate against Plaintiff for any protected communication she made to the E.E.O.C. regardless of whether her communications led to a valid discrimination claim. The communications themselves are protected and retaliation for having made them is unlawful independent of their content. To establish a prima facie case of retaliation, Plaintiff must show "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie, 547 F.3d at 229 (4th Cir. 2008). Further, although status-based discrimination claims (such as sex discrimination) only require that unlawful discrimination be a "motivating factor" for an employer's actions, retaliation claims are subject to a higher "but for" causation standard under which Plaintiff must show the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected

---

[8] Because Plaintiff has not shown the existence of a sufficiently severe and pervasive hostile work environment, it is unnecessary to determine whether the alleged conduct of lower-level employees can be imputed to Defendant.

activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013).

Even assuming the non-renewal of Plaintiff's contract was an adverse action, Plaintiff has failed to show any causal connection between her protected activity and her contract not being renewed. Thus, her retaliation claim fails a fortiori under the heightened causation standard of Nassar.

Thus far, the Court has been focused entirely on the first step of the McDonnell Douglas analysis; Plaintiff's failure to establish a prima facie case of race discrimination, hostile work environment, or retaliation. However, even if she had established a prima facie case for any claim, Plaintiff has not shown the myriad legitimate nondiscriminatory reasons for her contract not being renewed were in any way pretextual. Thus, for Plaintiff's Title VII claims, summary judgment in Defendant's favor is clearly appropriate.

Finally, the Court turns to Plaintiff's claim under 42 U.S.C § 1981. Because Plaintiff's § 1981 claim is also subject to the McDonnell Douglas burden-shifting analysis, see Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001), this claim fails for the same reasons her Title VII claims fail.

In sum, Plaintiff has not produced any evidence identifying similarly-situated employees outside her protected class that were treated differently. Nor has she shown "severe and

pervasive" harassment by L.C.P.S. Thus, she has not established a prima facie case of race discrimination, retaliation, or hostile work environment. Therefore, under <u>McDonnell Douglas</u> summary judgment must be entered in favor of Defendant on Plaintiff's claims under both Title VII and § 1981.

    An appropriate order shall issue.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August _17_, 2015